UNITED STATES

v.

Dan T. NAKAMURA, 575 02 1061, Lance Corporal (E–3), U.S. Marine Corps.

NMCM 85 1221.

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 11 June 1984.

Decided 31 Oct. 1985.

LCDR FREDERICK N. OTTIE, JAGC, USN, Appellate Defense Counsel.

LT RICKEY P. ROECKER, JAGC, USNR, Appellate Defense Counsel.

CAPT W.J. HUGHES, JAGC, USN, Appellate Government Counsel.

LT W.A. DURLING, JAGC, USNR, Appellate Government Counsel.

Before GLADIS, Senior Judge, and COUGHLIN and CASSEL, JJ.

COUGHLIN, Judge:

At a judge alone special court-martial on 14 and 30 May and 11 June 1984, appellant was found guilty, contrary to his pleas, of the larceny of property belonging to the Marine Corps Exchange at Kaneohe Bay, Hawaii in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921. He was sentenced to confinement at hard labor for 6 months, forfeiture of $397.00 pay per month for 6 months, reduction to pay grade E–1, and a bad conduct discharge. The supervisory authority approved the sentence as approved by the convening authority, but suspended the bad conduct discharge for a period of one year from the date of his action.

Upon considering the record of trial and the briefs of counsel, the Court perceives the following issues as bearing on the resolution of this case:

I

DID THE MILITARY JUDGE ABUSE HIS DISCRETION BY NOT GRANTING THE ACCUSED RELIEF FROM THE WAIVER RULE OF RULE FOR COURT–MARTIAL (R.C.M.) 905(e) WHEN CIVILIAN DEFENSE COUNSEL WAS APPARENTLY UNAWARE OF THE WAIVER RULE AND THE MILITARY JUDGE HAD NOT ASKED HIM FOR ANY MOTIONS PRIOR TO RECEIVING PLEAS?

II

WAS THE DEFENSE MOTION FOR A FINDING OF NOT GUILTY, BASED IN PART ON THE LACK OF INDEPENDENT EVIDENCE CORROBORATING THE CONFESSION, PROPERLY DENIED BY THE MILITARY JUDGE?

III

WAS APPELLANT'S GUILT ESTABLISHED BEYOND A REASONABLE DOUBT?

FACTS

While checking on an alarm activation one night in the middle of October, 1983 at the Marine Corps Exchange on Marine Corps Air Station, Kaneohe, Hawaii, Sergeant (SGT) Oransky, USMC, a military policeman (MP), climbed up onto the roof of the exchange and noticed one window was unsecured. In a conversation the next day with Staff Sergeant (SSGT) Hester, USMC, military police watch commander, a plan was conceived to break through the unsecured window in order to feloniously enter the exchange. Approximately two weeks later, on the night of 28 October 1983, the plan matured to fruition when SGT Oransky informed Corporal (CPL) Hoffman, a fellow MP, that "he had a pair of these little cutters" that would allow them to get

into the window. They were both off duty and agreed to attempt the break-in shortly after midnight. Prior to embarking on this clandestine and unlawful enterprise, however, they took steps to ensure their security by letting their friend, Lance Corporal (LCPL) Kirby, one of the MP's who would be on duty in a mobile unit that night, in on the plot. LCPL Kirby agreed to act as a lookout and procured a hand-held radio by which the perpetrators would be able to listen in on police transmissions. If the alarm went off while SGT Oransky and CPL Hoffman were breaking into the exchange, LCPL Kirby would cover the exchange to allow the thieves to make good their escape. Into this conspiratorial setting unwittingly entered the appellant, then Private First Class (PFC) Nakamura, who had, coincidentally, been assigned as LCPL Kirby's "alpha rider" that evening.

At the appointed hour, SGT Oransky and CPL Hoffman broke into the exchange and proceeded to help themselves to choice items from the store's inventory. While they were transporting to the roof of the exchange the various audio, video, and computer goods they had pilfered therefrom, LCPL Kirby, accompanied by the unknowing PFC Nakamura, drove his military police vehicle to the darkened rear of the exchange. It was then that the appellant observed that there were people on the roof passing boxes down to the ground. Nakamura, sensing that something was amiss, asked LCPL Kirby what was going on. Kirby, keeping the patrol's lone hand-held radio on his person, told Nakamura to keep his mouth shut and "to go up to the front and wait for him." Nakamura did as he was told. A few minutes later, Kirby drove the vehicle around front, dropped off SGT Oransky, and picked up Nakamura. As they were driving away, Nakamura observed an individual, later identified as CPL Hoffman, hiding amongst boxes in the rear of the military pick-up. Nakamura told Kirby to drop him off at the back gate because, according to his testimony, he "didn't want to get involved with all that stuff." Kirby refused to do so and, instead, drove to a secluded area where he

and CPL Hoffman unloaded the truck. Moments later, SGT Oransky pulled up in his privately owned vehicle and loaded the goods therein.

LCPL Nakamura was subsequently brought to trial and convicted for aiding and abetting the larceny of the exchange.

## I

### DID THE MILITARY JUDGE ABUSE HIS DISCRETION BY NOT GRANTING THE APPELLANT RELIEF FROM R.C.M. 905(e)?

There were two Article 39(a), 10 U.S.C. § 839(a), sessions in the instant case before opening statements and the presentation of evidence. Civilian defense counsel was absent from the first Article 39(a) session on 14 May where the military judge stated to detailed defense counsel "that any motion to dismiss the charge or to grant other relief should be made at this time." Detailed defense counsel requested "permission to reserve motions and pleas" and the accused was arraigned. At the second Article 39(a) session held on 30 May, civilian counsel was sworn and the appellant expressed his desire to be tried by military judge alone. Before asking for a plea the military judge did *not* specifically state to the accused and his two defense counsel (detailed defense counsel stayed on as assistant counsel) that all motions should be made prior to pleas or be waived. Without making any motions, appellant entered a plea of not guilty. Before adjourning the Article 39(a) session, however, the military judge asked the defense team if there was anything else. Civilian counsel answered in the negative and the court was adjourned until 11 June.

At the trial's next session on 11 June, the military judge asked counsel, "Is there anything else before opening statement?" Civilian defense counsel answered, "Nothing, your Honor." Opening statements then commenced without any motions having been made. Subsequently, the Government presented the testimony of Gunnery Sergeant (GYSGT) W, an agent of the Naval

Investigative Service (NIS), in order to introduce an incriminating statement which he had taken from the appellant. Civilian defense counsel objected to the introduction of the alleged confession on the grounds that the Government had not laid the foundation that appellant's statement was made in a knowing and intelligent manner. The military judge explained to counsel that failure to make a motion to suppress a confession prior to pleas waives any subsequent objection to the introduction of the statement on grounds attacking its voluntariness. Thus, the military judge refused to entertain defense counsel's objection because it was untimely made. Appellant now claims that the military judge abused his discretion by not allowing civilian defense counsel to raise the objection at the time of the introduction of the evidence.

Motions to suppress evidence "must be raised before a plea is entered...." R.C.M. 905(b)(3). R.C.M. 905(e) provides that "[f]ailure by a party to raise defenses or objections or to make requests which must be made before pleas are entered under subsection (b) of this rule shall constitute waiver. The military judge for good cause shown may grant relief from the waiver." In conjunction therewith, Military Rule of Evidence (Mil.R.Evid.) 304(d)(2)(A) states, in pertinent part, as follows:

> Motions to suppress or objections under this rule or rules 302 or 305 to statements that have been disclosed shall be made by the defense *prior to the submission of a plea.* In the absence of such motion or objection, the defense may not raise the issue at a later time except as permitted by the military judge for good cause shown. Failure to so move or object constitutes a waiver of the objection. (Emphasis added).

■ We find that the military judge did not abuse his discretion in not granting appellant relief from the waiver rule. Appellant was represented not only by civilian defense counsel but by detailed military

counsel as well. Even assuming civilian defense counsel was unaware of the waiver rule, the military judge, at the first Article 39(a) session, had advised military counsel that any motion to dismiss or to grant appropriate relief was to be made prior to pleas. At that time, military counsel reserved motions and pleas and a schedule for the filing of motions was established. Thus, the defense team had adequate notice that motions should be filed prior to pleas and ample opportunity to do so. Furthermore, civilian counsel should have been aware of the waiver rule since he was a member of the Federal District Court Bar for the Ninth Circuit. Rule 12 of the Federal Rules of Criminal Procedure states that motions to suppress evidence must be raised *prior to trial.* That rule also provides that "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial ... *shall constitute waiver thereof.*" (Emphasis added). *See also United States v. Maher,* 645 F.2d 780, 783 n. 1 (9th Cir.1981) (applying Rule 12 to an untimely motion to suppress statement under 18 U.S.C. § 3501) (rehearing and rehearing en banc denied 22 July 1981). In this respect we agree with appellate government counsel that civilian counsel representing an accused in the military justice system has an obligation to be thoroughly familiar with its rules.[1] In any event, the testimonies of the appellant and of the government agent who recorded the alleged confession reveal, in our opinion, that the statement was not "involuntary" within the meaning of the exclusionary rule. Thus, even if it had been timely made, the motion would have been futile.

## II

### CORROBORATION OF THE CONFESSION

■ At the close of the Government's case, the defense moved for a finding of not guilty on the grounds, *inter alia,* that appellant could not be found guilty on the basis of an uncorroborated confession.

1. *See* Rule 1.1 of the American Bar Association Model Rules of Professional Conduct (1983).

R.C.M. 917(d) sets forth the standard to be used by the military judge in considering this motion:

A motion for a finding of not guilty shall be granted only in the absence of some evidence which, together with all reasonable inferences and applicable presumptions, could reasonably tend to establish every essential element of an offense charged. The evidence shall be viewed in the light most favorable to the prosecution, without an evaluation of the credibility of witnesses.

The testimony of SGT Oransky, together with the confession, could reasonably tend to establish the essential elements of the offense charged and, accordingly, the military judge properly denied the motion. In reaching this conclusion we need not decide whether the confession was corroborated. The confession had been admitted into evidence during the government's case-in-chief with no objection from the defense relating to corroboration by independent evidence. It was thus untimely to raise this issue in conjunction with a motion for a finding of not guilty. The failure to object to the lack of corroboration of the confession at the time of its admission constituted a waiver. *United States v. Lockhart,* 11 M.J. 603 (A.F.C.M.R.1981).

The failure of the defense team to make a pretrial motion regarding the voluntariness of the confession or to timely raise the issue of its corroboration puts into question whether the appellant received his Sixth Amendment right to the effective assistance of counsel. Although this issue is not devoid of merit, we can dispose of this case upon the far broader and clearer decisional basis discussed below.

### III

### WAS APPELLANT'S GUILT ESTABLISHED BEYOND A REASONABLE DOUBT?

We are not convinced of appellant's guilt beyond a reasonable doubt. The Government's case was based primarily on the allegedly damning utterances made by the appellant in his purported confession to NIS and the immunized testimony of SGT Oransky. The appellant's confession contained the following two pivotal admissions: (1) "Kirby then told me to go around front and watch to see if anyone came. I went around front and Kirby picked me up a little later;" (2) "Oransky got out of the truck and we left and drove to the Amtrac Road on the beach side, where we unloaded the truck." Prosecution Exhibit 1. Thus, the prosecutional theory was that the appellant aided and abetted the larceny of the exchange by acting as a lookout and by assisting in the asportation of the stolen goods.

SGT Oransky testified, in pertinent part, that he first noticed the unexpected presence of the appellant when CPL Kirby pulled the police van to the back of the exchange. Feeling "kind of guilty" that the appellant was not receiving any of the spoils of the theft, Oransky offered him a "Walkman" radio and he "didn't turn it down in any way." The goods from the exchange were then loaded onto the military vehicle and Oransky told Kirby to take the pilfered items out to the secluded Amtrac Road where Oransky would meet him to transfer the goods to his own vehicle. CPL Hoffman then jumped into "the back of the flatbed and was going to go with them and help them unload everything and they took off." Finally, Oransky testified that when he got to the rendezvous point, "LCPL Nakamura and CPL Kirby were just pulling away after dropping everything off."

We give little weight to SGT Oransky's testimony concerning appellant's participation in the larceny. Defense counsel impeached his story concerning Nakamura's willing acceptance of the "Walkman" radio by demonstrating that in previous sworn testimony and in two prior sworn statements concerning the items stolen and the identification of personnel involved in the theft, Oransky never mentioned either the "Walkman" radio or that Nakamura was involved in the larceny or in the receipt of any of its proceeds. In contrast, Nakamura testified, and credibly so, that he was

neither offered nor did he receive any of the stolen items, including the "Walkman" radio. The remainder of Oransky's testimony establishes merely the presence of Nakamura at the scene of the loading and unloading of the stolen goods onto and off of the police van. Again, appellant's testimony credibly disposed of the incriminating implications of such presence.

■ It is a well-established principle that the law of aider and abettor

is not a dragnet theory of complicity. Mere inactive presence at the scene of the crime does not establish guilt.... Neither does later approval of the act supply a ground for conviction.... The law requires concert of purpose or the aiding and encouraging of the perpetrator of the offense and a conscious sharing of his criminal intent.

United States v. Jackson, 6 U.S.C.M.A. 193, 19 C.M.R. 319 (1955); see also United States v. McCarthy, 11 U.S.C.M.A. 758, 29 C.M.R. 574 (1960); United States v. Ford, 12 U.S.C.M.A. 31, 30 C.M.R. 31 (1960); United States v. McCue, 3 M.J. 509 (A.F.C. M.R.1977); United States v. Void, 17 M.J. 740 (A.C.M.R.1983). Appellant's presence at the scene of the crime was a result solely of his less than fortuitous assignment to a police mobile unit whose leader happened to be part of a criminal conspiracy and whose vehicle that conspirator used as a means to accomplish the object thereof. The lack of any readily observable, objective manifestation of appellant's disapproval of the conspirators' acts was not demonstrative of "a common purpose to accomplish the criminal design," McCarthy, 29 C.M.R. at 577, but was, rather, a result of the duress under which he was placed by being caught in the middle of a criminal enterprise involving a substantial portion of his chain of command.

Appellant's confession ostensibly establishes his complicity in the larceny as an aider and abettor. We are not convinced, however, that the purported confession, which is a recitation by the NIS agent of his perception of the appellant's articulation of what happened that evening, albeit signed by the appellant, accurately reflects his participation in the events surrounding the larceny from the exchange. We base this conclusion primarily on the credible testimony of the appellant, as well as the dearth of independent evidence corroborating the purported confession.

■ We find that the accused did not act as a lookout, did not assist in the unloading of the goods, and did not otherwise participate as either a principal, an aider and abettor, or accessory after the fact and, therefore, is not guilty of the offense charged.

The findings of guilty are set aside, the charge and its specification are dismissed, and the sentence is disapproved. All rights, privileges, and property of which the appellant has been deprived shall be restored.

GLADIS, Senior Judge, concurs.

CASSEL, Judge (concurring):

I concur completely with the ultimate disposition of this case. I do not agree with my brothers' treatment of the first assignment of error. At the first Article 39(a) session the trial judge was Lieutenant Colonel R. The civilian counsel was absent and the military counsel expressly reserved motions and pleas. At that time the military judge set up a schedule for motions to be filed. At the next session the military judge was Lieutenant Commander T and the civilian counsel entered his appearance and stated he had not appeared in military courts before. The military judge noted that appellant had been arraigned. There was no discussion of motions, the trial date of 11 June was set, and appellant entered a plea of not guilty. The trial commenced on 11 June with no further discussion of motions. When the prosecution offered the exhibit (appellant's statement to NIS), civilian counsel requested voir dire on the admissibility of the document and then objected to its admissibility. From the colloquy between the military judge and civilian counsel it appears to me that the counsel was unaware of the

waiver provisions of R.C.M. 905(b). Thus, under these circumstances, I would consider it prudent for the trial judge to permit the defense to litigate the issue at that time and probably an abuse of discretion not to do so, but I agree with the majority that the error was not prejudicial.