UNITED STATES, Appellee,

v.

Private E1 Adrian G. MORRIS, Jr., 345–58–5966, United States Army, Appellant.

ACMR 8701875.

U.S. Army Court of Military Review.

3 July 1990.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Keith W. Sickendick, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Major Gary L. Hausken, JAGC, Captain George R. Johnson, JAGC (on brief).

Before MYERS, JOHNSON and NEURAUTER, Appellate Military Judges.

### OPINION OF THE COURT

NEURAUTER, Judge:

Appellant was tried by a military judge sitting as a general court-martial and convicted of consensual sodomy and wanton disregard for human life in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 (1982) [hereinafter UCMJ]. Appellant was sentenced to a bad-conduct discharge, forfeiture of $400.00 pay per month for three months, restriction to the limits of Fort

Huachuca, Arizona, for two months, and ordered not to have unprotected sex with anyone until he left Fort Huachuca. The convening authority approved only so much of the sentence as provides for a bad-conduct discharge, forfeiture of $400.00 pay per month for three months, and restriction to the limits of Fort Huachuca, but suspended the restriction for a period of two years with provision for automatic remission.

This case has previously been before this court on interlocutory appeal pursuant to Article 62, UCMJ, 10 U.S.C. § 862. *United States v. Morris*, 25 M.J. 579 (A.C.M.R.), *pet. granted*, 25 M.J. 441 (C.M.A.1987), *order issued*, 26 M.J. 46 (C.M.A.), *order vacated, pet. denied*, 26 M.J. 219 (C.M.A. 1988). At trial, the government had introduced into evidence results of appellant's Human T–Lymphotrophic Virus Type III (HTLV–III), also known as Human Immunodeficiency Virus (HIV), tests. This evidence was significant in proving the Article 134, UCMJ, offense. The military judge granted a defense motion to suppress the test results and then denied the government's motion to reconsider. On appeal, this court held that the tests should not have been suppressed and that, although U.S. Army policy precluded disciplinary or other adverse actions based solely upon a test result, it would not prohibit use of the test results where they directly relate to future misconduct.[1] *Morris*, 25 M.J. at 580.

### I

In the first of several assignments of error, appellant asserts that the government failed to establish that the blood which tested as positive for HIV was appellant's blood. Appellant contends that the military judge erred in failing to require the government to establish this connection by a chain of custody or other competent method. Thus, appellant concludes that the blood test results before the trial court

---

1. The policy in existence at that time was outlined in Department of the Army Letter No. 40–86–1, 1 Feb. 1986, subject: Policy for Identification, Surveillance, and Disposition of Personnel Infected with Human T–Lymphotrophic Virus Type III (HTLV–III) [hereinafter DA Letter 40–86–1].

did not have any tendency to show that appellant was infected with HIV and were therefore irrelevant.

At trial, the government offered appellant's medical records into evidence to show that appellant was infected with HIV based upon tests of appellant's blood taken from him in April and June of 1986. Defense counsel objected to admission of the documents arguing that the government had not shown relevance by establishing a chain of custody for the blood samples taken from appellant. Prior to findings in the case, the military judge ruled that relevance was established and admitted the records.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Manual for Courts–Martial, United States, 1984, Military Rules of Evidence 401 [hereinafter Mil.R.Evid.]. Appellant is correct in his assertion that to be relevant to this case, the evidence must establish that the blood which tested positive for HIV was appellant's blood. We conclude that the evidence establishes that fact beyond a reasonable doubt.

Appellant's medical records were admitted under the "records of regularly conducted activity" exception to the hearsay rule. Mil.R.Evid. 803(6). Under this exception, the guarantee of reliability is in the regularity of the recordkeeping and the reliance of the "business" on the records. See S. Saltzburg, L. Schinasi & D. Schlueter, *Military Rules of Evidence Manual* 645 (2d ed.1986). There is ample evidence within the record to establish that appellant is infected with HIV. In addition to the two specimen laboratory reports in appellant's name which show "HTLV III–Positive," for blood drawn during April and June 1986, the medical record contains an "HTLV III Western Blot Confirmation Shipping Form" which matches appellant's social security account number with a sam-

ple identification number, a control log which assigned that identification number to appellant's blood sample, and a screening record which indicates a positive result for HIV on the specimen with appellant's identification number. There is also documentation showing that the University of Arizona Health Sciences Center performed HIV serology tests on appellant which were found to be positive. Other documents show that appellant was subjected to other types of laboratory tests that generated results consistent with the conclusion that appellant is infected with HIV. Finally, in his testimony on another motion,[2] appellant stated that blood was drawn from him in June of 1986 for the purpose of testing for the HIV virus.

■■■ The case of *United States v. Cordero,* 21 M.J. 714 (A.F.C.M.R.1985), is helpful in resolving this issue. First, we are convinced that appellant's medical records were properly admitted by the military judge. As noted in *Cordero,* the trial judge exercises broad discretion in determining admissibility of evidence under Mil.R.Evid. 803(6), and the standard to be applied is whether he abused that discretion. *Id.* at 716. In addition, we conclude that, under the circumstances of this case, a chain of custody document is not necessary to show that the blood actually drawn from appellant in April and June of 1986 resulted in positive readings for HIV. That is simply one method for establishing that a fungible substance, such as blood or urine, is properly accounted for from the time it is taken from the donor through the testing process and for ensuring that it has not been tampered with in any significant fashion. We are convinced that the evidence supports those conclusions in this case in lieu of a chain of custody document.

## II

Appellant next asserts that his conviction of the Article 134, UCMJ, offense constitutes a violation of his right to due process in that he did not know nor could he have

---

**2.** Appellant testified on a motion to suppress the results of his blood test on fourth amendment grounds. He stated that he had applied for

jump school, was required to take a physical exam, and in June 1986, his blood was drawn as part of that exam.

reasonably known that his conduct was unlawful. Appellant argues that he engaged in non-deviant sexual intercourse with a female who, like himself, was unmarried at the time, and that such conduct is not a crime. *See United States v. Johanns,* 20 M.J. 155 (C.M.A.), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). Appellant notes that the gravamen of the offense consists of his infection with HIV and the placing of the victim, Specialist (SPC) P, at risk, but takes the position that he may not be held criminally liable for this because no one in authority told him that such activity would constitute a violation of the UCMJ.

■ In considering this assignment of error, we will look at three separate issues: First, if the allegations are established, could a factfinder properly find that the conduct "was palpably and directly prejudicial to good order and discipline of the service?" *United States v. Sadinsky,* 34 C.M.R. 343 (C.M.A.1964). Second, should the appellant have been aware in general terms of the significance of Article 134, UCMJ, offenses? Third, has the government shown, under the facts of this case, that appellant was put on fair notice of the potential consequences of his actions? *See United States v. Woods,* 28 M.J. 318 (C.M. A.1989).

With regard to the first issue, appellant's actions in willfully and deliberately exposing another servicemember to the risk of contracting HIV virus certainly rises to the level of conduct that is prejudicial to good order and discipline. On the second issue, as noted by the Court of Military Appeals in *Woods,* "a member of the armed forces has Article 134 'carefully explained' to him or her on initial 'entrance on active duty' and 'again after he [or she] has completed six months of' service." *Woods,* 28 M.J. at 320. The court concluded that "a military member is on 'fair notice' that conduct which is prejudicial to good order and discipline is punishable." *Id.* As to the issue of fair notice, several people testified at trial that they counseled appellant concerning his disease and explained to him the means by which HIV is normally transmitted to other persons, including unprotected sexual intercourse. Clearly, appellant was aware, prior to committing the offenses for which he has been convicted, of the fact that he had a fatal disease and that his conduct clearly posed a danger to his sexual partners.

We are convinced, as is the Court of Military Appeals, that the military, as well as society at large, has a compelling interest in having those who defend the nation remain healthy and capable of performing their duty. *Woods,* 28 M.J. at 319–320 (1989) (citing *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989)). The record in this case clearly establishes the danger to which SPC P was exposed as a result of the actions of appellant in engaging in unprotected sexual intercourse with her.

### III

■ Appellant next asserts that his blood test results may not be used as evidence against him in court-martial proceedings. This claim is based on provisions of Department of the Army and Department of Defense policies in effect at the time of the taking of his samples which provided for limited immunity with regard to those test results.

At appellant's trial, the trial defense counsel moved to suppress the results of appellant's blood tests which indicated the presence of HIV. The military judge granted the motion. Thereafter, the government appealed the military judge's ruling pursuant to Article 62, UCMJ. This court granted the appeal, vacated the ruling of the military judge, and directed return of the record to the military judge for further proceedings. *Morris,* 25 M.J. at 579. In finding that the military judge erred, this court stated that:

Under the circumstances of this case the test results are not privileged. The purpose of the stated privilege is to preclude disciplinary or other adverse actions based solely upon a test result (indicating possible past misconduct) or information of past misconduct revealed during a

post-test interview of an individual testing positive. As such, the privilege is a form of limited immunity granted for possible past criminal misconduct and does not prohibit use of the test results where they directly relate to future misconduct. Here the basis of the disciplinary action is not the mere presence of HIV antibodies but rather conduct alleged to have occurred after the test and with knowledge of HIV infection.

*Id.* at 580.[3] This decision is correct in law and fact, and we see no need to overturn or modify our opinion in any way.

### IV

Subsequent to this court's decision on the government's appeal, the Court of Military Appeals granted appellant's petition for grant of review. On 14 January 1988, the Court of Military Appeals ordered that the case be remanded to the convening authority with direction "[t]hat the convening authority request specific written guidance from the Secretary of Defense and the Secretary of the Army concerning permissibility of trial counsel's intended use of the test results in this case." *Morris,* 26 M.J. 46. On 31 March 1988, the Court of Military Appeals accepted Government Appellate Exhibits 2 and 3[4] over opposition by appellant. In the same order, the Court vacated the order granting review of this court's decision and denied the petition for grant of review without prejudice. *Morris,*

26 M.J. 219. Appellant's timely petition for reconsideration of that order was denied on 21 April 1988. *Morris,* 26 M.J. 282.

The appellant now requests that this court "remedy the constitutional violations which arose from the disposition of that interlocutory action by the United States Court of Military Appeals." Appellant asserts that in admitting and considering the government appellate exhibits, the Court of Military Appeals improperly considered "extra-record matter regarding the intent of the Secretaries on the issue before that court," and that this action "denied appellant the right to confront the witnesses against him." The appellant specifically asks that this court order a limited hearing for the purpose of gathering further evidence related to Government Appellate Exhibits 2 and 3 and the policies in question.

■ As already stated, we conclude that our opinion vacating the military judge's decision to suppress the results of appellant's blood test is correct in law and fact. *See Morris,* 25 M.J. 579. A review of Government Appellate Exhibits 2 and 3 simply reinforces our original decision. Therefore, no reason or purpose exists for ordering a further hearing to gather additional evidence on this issue. In addition, this court will not review the actions taken or the procedures used by the Court of Military Appeals in the exercise of its discretion whether to grant or deny petitions for review.[5] The UCMJ confers no express power upon this court to review any deci-

---

3. In a footnote, this court quoted the pertinent portions of DA Letter 40–86–1. *Morris,* 25 M.J. at 579–580 n. 2.

4. Government Appellate Exhibit 2 is a Memorandum for Commander, US Army Garrison, Fort Huachuca, Arizona, subject: Use of HIV Laboratory Results at Courts-Martial, and signed by Allen K. Ono, Lieutenant General, GS, Deputy Chief of Staff for Personnel. This memorandum opined that the limitations on use of positive HIV results do not apply to "the court-martial of Private Adrian Morris." It stated further that "[t]he limitations on use preclude disciplinary action for a past act based solely on the test results or use of information revealed during the epidemiological assessment interview." *Id.*

Government Appellate Exhibit 3 is also a Memorandum for Commander, US Army Garrison, Fort Huachuca, Arizona, subject: Use of HIV

Laboratory Results at Courts-Martial, and signed by William Mayer, M.D. It also contains the language quoted from Government Appellate Exhibit 2 but goes on to state that "[t]he limitations (on use of positive HIV results) were not intended as an absolute grant of immunity for post-HIV testing criminal conduct. Furthermore, the limitations do not apply to disciplinary actions that are based on independently derived evidence."

5. The scope of this court's review in cases that are properly before it is as follows:

(b) The Judge Advocate General shall refer to a Court of Military Review the record in each case of trial by court-martial—

(1) in which the sentence, as approved, extends to death, dismissal of a commissioned officer, cadet, or midshipman, dishonorable or bad-conduct discharge, or confinement for one year or more; and

sion or action of the Court of Military Appeals. This court is a creature of statute and its power and authority must be found within the confines of the creating legislation. *See United States v. Simmons,* 6 C.M.R. 105, 107 (C.M.A.1952); *see also Schlesinger v. Councilman,* 420 U.S. 738, 758, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1975). Despite that general proposition, if we were convinced that the Court of Military Appeals, in acting on appellant's petition, had acted in a manner which deprived appellant of a fundamental constitutional right, we would, in reviewing the entire record for errors in fact and law, feel compelled to take remedial action. Such is not the case here. We are not privy to what the Court of Military Appeals meant by its order of 31 March 1988 other than that it ultimately decided to vacate its order granting review of the decision of this court and deny appellant's petition for grant of review without prejudice. We cannot know, nor will we speculate, what factors weighed in favor of that denial. The Court of Military Appeals has the power to act on petitions of that nature in its own discretion free from interference by a subordinate appellate court except in the most extraordinary circumstances. *See United States v. Bullington,* 13 M.J. 184, 188 (C.M.A.1982). Despite the averments of appellant, those circumstances are not before us in this matter.

**V**

■ Although not assigned as error by appellant, we have examined the issue of whether Specification 2 of Charge I, wanton disregard for human life,[6] properly states an offense under the circumstances of this case in light of the Court of Military Appeals' opinion in *Woods,* 28 M.J. 318.

This specification is very similar to the offense alleged in *Woods.* The primary difference, however, and the focus of our concern is that in *Woods,* the allegation was that Hospitalman Woods engaged in unprotected (without the utilization of a condom or other device to protect the partner from contamination) sexual intercourse. *Woods,* 28 M.J. at 318.

■ It is well established that for a specification to be legally sufficient it must contain all the elements of the offense, it must serve notice on the accused of what he will defend against, and it must provide sufficient factual information to protect the accused against subsequent prosecution for the same offense. *United States v. Sell,* 11 C.M.R. 202 (C.M.A.1953). The Court of Military Appeals, in *United States v. Watkins,* 21 M.J. 208 (C.M.A.1986), adopted the so-called "greater tolerance" test in deciding that "[a] specification need not expressly allege all elements of the offense, but it

(2) except in the case of a sentence extending to death, the right to appellate review has not been waived or an appeal has not been withdrawn under section 861 of this title (article 61).
(c) In a case referred to it, the Court of Military Review may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.
(d) If the Court of Military Review sets aside the findings and sentence, it may, except where the setting aside is based on lack of sufficient evidence in the record to support the findings, order a rehearing. If it sets aside the findings and sentence and does not

order a rehearing, it shall order that the charges be dismissed.
UCMJ art. 66(b)–(d), 10 U.S.C. § 866(b–d).

6. Specification 2, Charge I, reads as follows:
   In that Private First Class Adrian G. Morris, Jr., U.S. Army, Headquarters Company, Headquarters Command, United States Army Garrison Fort Huachuca, Fort Huachuca, Arizona, did, at or in the vicinity of Fort Huachuca, Arizona, at divers times from about July 1986 until about March 1987, wrongfully and in wanton disregard for human life, expose Specialist Four [P], U.S. Army, to the risk of contracting the Acquired Immune Deficiency Syndrome (AIDS) disease, a fatal and incurable disease, to wit: while knowing that he was infected with the Human Immunodeficiency Virus (HIV), commonly known as the AIDS virus, and knowing that the said virus can be sexually transmitted, did intentionally *engage in sexual intercourse* with the said Specialist Four [P].
   (Emphasis added).

must aver all elements at least by fair implication." *Id.* at 209 (citing *United States v. Schwarz,* 15 M.J. 109 (C.M.A. 1983); *United States v. McCollum,* 13 M.J. 127 (C.M.A.1982)).

Here, the appellant did not challenge the specification at trial and it is clear that he was not misled as to the nature of the allegation or the conduct it was aimed at. It was also clear from the testimony of the victim, SPC P, that appellant engaged in unprotected sexual intercourse with her on divers occasions. Therefore, under the circumstances of this case, we hold that the specification is sufficient in that it can, within reason, be construed to allege a crime. *Watkins,* 21 M.J. at 210.

### VI

■ This court, by order dated 22 March 1990, specified the following issue and requested briefs from appellate counsel:

> WHETHER THE VICTIM'S CONSENT TO ENGAGE IN UNPROTECTED SEXUAL INTERCOURSE WITH APPELLANT, KNOWING THAT APPELLANT WAS INFECTED WITH THE FATAL VIRUS, HIV, AND BEING AWARE THAT THE VIRUS MAY BE TRANSMITTED BY WAY OF UNPROTECTED SEXUAL INTERCOURSE, CONSTITUTES A VALID DEFENSE TO THE CHARGE ALLEGED.

The military judge found appellant guilty of wanton disregard for human life in violation of Article 134, UCMJ, during the time period from January 1987 through March 1987 by exceptions and substitutions (see footnote 6 for original specification). The victim of the offense, SPC P, was aware as of January 1987 that appellant was infected with HIV, and further, as she testified, aware that the infection is fatal and could be transmitted to a sexual partner by means of unprotected sexual intercourse. Despite that, SPC P consented to having sexual intercourse with appellant on numerous occasions and she testified that she may have requested that appellant not wear a condom, but that, in any case, appellant only wore a condom while engaged in sexual intercourse with SPC P approximately twenty-five percent of the time.

The Navy–Marine Corps Court of Military Review, in *United States v. Woods,* 27 M.J. 749 (N.M.C.M.R.1988), *aff'd,* 28 M.J. 318 (C.M.A.1989), analyzed this issue in some detail. Since that issue was not presented to that court for review, however, it declined to decide whether consent constitutes a valid defense. We conclude that it is not a defense for the appellant in this case.

Both the Navy–Marine Corps Court of Military Review and the Court of Military Appeals concluded that the gravamen or "essence" of the offense alleged in *Woods,* hence its criminality, is that the appellant "engaged in sexual intercourse with another, knowing that to do so without protection was an 'inherently dangerous' act likely leading to 'death or great bodily harm,' and that under the circumstances his conduct was 'prejudicial to the good order and discipline in the Armed Forces.'" *Woods,* 28 M.J. 318 at 320.

In addition, we note the societal interests involved with this type of offense: the deterrence of appellant and others from further reckless behavior and stopping the spread of a deadly disease. We believe that society has an interest in preventing such conduct as committed by appellant in this case, whether the victim consents or not. Both appellant and the victim, SPC P, were soldiers at the time of the offenses. They were not married when they engaged in this conduct. Although the victim knew that appellant had tested positive for the HIV, appellant's acts of unprotected sexual intercourse over a period of time created a situation where death or great bodily harm was a probable consequence.

We have considered the remaining issue asserted by appellant and find it to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge MYERS and Judge JOHNSON concur.