UNITED STATES, Appellee

v.

Staff Sergeant Juanito PEREZ,
108–44–1641, United States
Army, Appellant.

ACMR 9002828.

U.S. Army Court of Military Review.

27 Nov. 1991.

Reconsideration Denied 17 Jan. 1992.

For Appellant: Captain Alan M. Boyd, JAGC, Captain Tamela J. Armbruster, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC, Captain Robert J. Walters, JAGC (on brief).

Before FOREMAN, ISKRA and CREAN, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Judge:

The appellant was tried by a military judge sitting as a special court-martial for aggravated assault and adultery, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 (1982) [hereinafter UCMJ]. He was found guilty of a lesser included offense, assault consummated by a battery, and the adultery. The convening authority approved the adjudged sentence of a bad-conduct discharge. This case involves the

issue of whether a soldier who has the Human Immunodeficiency Virus (hereinafter referred to as HIV), the viral agent that causes the usually fatal Acquired Immunity Deficiency Syndrome (AIDS),[1] but is incapable of transmitting it by sexual contact, may be convicted of assault consummated by a battery for an act of consensual sexual intercourse.

The appellant tested positive for HIV in 1986. From February to August 1989, appellant and Ms. E worked in the same office at Fort Devens, Massachusetts. In August 1989, Ms. E started a new job in another Fort Devens' office and had no further working relationship with the appellant. In September 1989, the appellant and his wife of 17 years separated and entered into a formal separation agreement. The separation agreement provided that each party "could conduct individual business and personal affairs without interfering with each other in any way, just as if [they] were not married". In November 1989, appellant again met Ms. E again and they had three dates between November 1989 and January 1990. On each date, they had consensual sexual intercourse in the privacy of Ms. E's bedroom at her off-post residence. On the first date before engaging in sexual intercourse, Ms. E told the appellant she had condoms for his use. The appellant informed her that would not be necessary since he "had been fixed", and condoms were not used in any of the three incidents of sexual intercourse. Ms. E was aware that the appellant was having marital problems and was separated from his wife. In January 1990, a friend of Ms. E's, knowing she was dating the appellant, informed her that he was HIV positive.

The government's expert witness on the AIDS virus, Colonel (Doctor) Tramont of Walter Reed Army Medical Center, testified that the HIV virus is transmitted through sexual relations or the transfusion of blood or blood products. He further testified, referring to normal heterosexual sexual acts, as follows:

Q. [H]ow is this virus transmitted?

A. Well, the ejaculation contains lots of different cellular materials from sperm to cells to red cells, macrophages, even the field cells that line the ureter or the vasodentins or the urethra; and it is those cells which are felt to be infected. It is those cells when transmitted to the spouse or to the contact either through sex or through blood transfusion and that's when the infection occurs or takes hold.

Q. In a scenario involving a male with the virus, as in this case Walter Reed Stage III–HIV, if that person were to ejaculate into the female does her body actually come in contact with the virus?

A. *If there is a virus in the ejaculation, yes.*

Q. And based on the scenario, would there be HIV in that semen?

A. If—there could be. No one can say if it is there all the time. (Emphasis added).

Upon cross examination by the defense counsel, Doctor Tramont explained:

Well, the greater the likelihood of the infection being spread by genital secretions is related to the number of cellular elements in that fluid. A ejaculate [sic] has more cellular elements than does the lubrication that normally occurs before full ejaculation. And so that's why I say that it is much more likely if you have a full ejaculation.

The pertinent question that Doctor Tramont was never asked is what effect a vasectomy has on the ability of a HIV-positive male to transmit the AIDS virus in vaginal sexual intercourse.

Doctor Wright, the defense expert on the HIV disease (a former Army doctor and colleague of Doctor Tramont, who had worked extensively in the Army's HIV research program and was engaged in HIV research in private practice) testified that the appellant's medical records show that he had a vasectomy and that—

---

1. For an excellent analysis of the AIDS virus under the UCMJ, see Wells–Petry, *Anatomy of an AIDS Case: Deadly Disease as an Aspect of* *Deadly Crime,* The Army Lawyer, Jan. 1988, at 23.

Based upon the fact that Sergeant Perez has a vasectomy and the fact that he has not transmitted the virus either to his wife or to other sexual partners, *my best medical opinion is that Sergeant Perez can't transmit the virus because he has an acellular semen specimen.* (Emphasis added).

 The appellant contends that the evidence is legally insufficient to support a finding of guilty to assault consummated by a battery because based upon the unrebutted testimony of Doctor Wright, it was factually impossible for the appellant to commit the battery. The standard for this court's review for legal sufficiency is whether considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987); *United States v. King*, 32 M.J. 558, 562 (A.C.M.R.1991); Article 66, UCMJ, 10 U.S.C. § 866.

It is well settled that an HIV-positive soldier can be convicted of assault under Article 128, UCMJ, for engaging in unwarned, unprotected sexual intercourse. *United States v. Johnson*, 30 M.J. 53 (C.M.A.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 294, 112 L.Ed.2d 248 (1990): *United States v. Stewart*, 29 M.J. 92 (C.M.A.1989). In the reported cases, however, there was no issue whether the infected soldiers were capable of transmitting the HIV-virus.

 Under the UCMJ, an assault can be done by an offer, by an attempt, or by a battery. We will discuss the facts of this case in relation to these three theories. The gravamen of an offer-type assault is the placing of the victim in reasonable apprehension of an immediate unlawful touching of her person. It is not a defense that the offered touching cannot actually be accomplished. Manual for Courts-Martial, United States, 1984, Part IV, para, 54c [hereinafter MCM, 1984]. *United States v. Pittman*, 42 C.M.R. 720 (A.C.M.R.1970), *United States v. Hernandez*, 44 C.M.R. 500 (A.C.M.R.1971). Since Ms. E did not learn until long after the sexual encounters that the appellant was HIV-positive, and since the sexual encounters occurred with her consent, the evidence is not legally sufficient to support a finding of assault on the offer theory.

 An act of private, consensual, non-deviate, unprotected, and unwarned heterosexual intercourse by an HIV positive soldier can be the basis for an assault by either the attempt or battery theory. An assault by attempt is an overt act done with apparent present ability to apply force to the victim. The assault is a battery when the overt act actually applies force to the other person. MCM, 1984, Part IV, para. 54c. The government must prove beyond a reasonable doubt that the instrument used under the circumstances was likely to result in harm, making the act an offensive touching. MCM, 1984, Part IV, para. 54c(1). Consensual sexual intercourse itself is not offensive touching; the ability to place the HIV-virus in the body of an unaware victim is the offensive touching. The government expert in this case testified that the AIDS virus can be transmitted in an act of heterosexual sexual activity if the virus is in the ejaculation. The defense expert testified that in his opinion, because of the appellant's vasectomy, the appellant's semen was acellular and he could not, therefore, transmit the AIDS virus during sexual intercourse.

Accordingly, we hold that the evidence is legally insufficient to support a conviction of assault consummated by a battery, because the government has failed to prove an essential element of the offense, that the appellant had the ability to assault the victim by transmitting the HIV virus.[2]

2. Our holding is based on a failure of proof; we
do not determine as a matter of medical scien-

This holding may answer Judge Cox's concern whether a soldier with the HIV virus commits an offense when he uses a condom throughout sexual intercourse and thereby does not subject the victim to the risk of the AIDS virus. *Johnson,* 30 M.J. at 58 n. 8 (C.M.A.1990).

In his second assignment of error, the appellant asserts that the evidence is both legally and factually insufficient to support a finding of guilty to the offense of adultery. Adultery is a military criminal offense under Article 134, UCMJ. *United States v. Hickson,* 22 M.J. 146 (C.M.A.1986). Among other elements, the government must prove that under the circumstances the adulterous act of sexual intercourse was either prejudicial to good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

■■■ We are not prepared to state a *per se* rule that sexual intercourse with a person not his or her spouse by a married soldier under any circumstance constitutes the offense of adultery under Article 134, UCMJ. Article 134 is not "a catchall as to make every irregular, mischievous, or improper act a court-martial offense." *United States v. Sadinsky,* 34 C.M.R. 343, 345 (C.M.A.1964). The government must prove, either by direct evidence or by inference, that the accused's conduct was prejudicial to good order and discipline in the armed forces or was of a nature to bring discredit on the armed forces. The prejudice must be reasonable and directly and palpably prejudicial to good order and discipline. MCM, 1984, Part IV, para. 60(c)(2)(a), *United States v. Sadinsky,* 34 C.M.R. at 345; *United States v. Williams,* 26 M.J. 606 (A.C.M.R.1988). The conduct must bring the service into dispute or lower it in the public esteem. MCM, 1984, Part IV, para. 60(c)(3). Civilians must be aware of the behavior and the military status of the offender. *United States v.*

*Kirksey,* 20 C.M.R. 272 (C.M.A.1955). Open and notorious conduct may be service discrediting, while wholly private conduct is not generally service discrediting. *United States v. Berry,* 20 C.M.R. 325 (C.M.A.1956). We do not agree with the government's position that the appellant's HIV positive condition is itself sufficient to show prejudice to good order and discipline in the armed forces or of a nature to bring discredit on the armed forces.

■■■ The facts are not in controversy. From November 1989 to January 1990, the appellant was still married but separated from his wife. The appellant engaged in consensual sexual intercourse and Ms. E was aware of the appellant's marital status. The acts were done in the privacy of Ms. E's home, off-post, the parties did not have a work relationship, and the government did not prove that the appellant was able to transmit the HIV disease in sexual intercourse. We find no evidence in the record that the appellant's conduct adversely affected good order and discipline. Accordingly, we hold that the evidence is legally insufficient to prove prejudice to good order and discipline.

■■■ Likewise, the sexual intercourse was with a civilian having no military or work relation with the accused, off-post, in the privacy of a bedroom, and the government did not prove that the appellant was able to transmit the HIV disease in sexual intercourse. While the appellant was still technically married to his wife, the separation agreement would appear to permit sexual intercourse with another woman without violating the sanctity of the marriage contract. The government presented no evidence that the conduct offended local law or community standards.[3] On the record before us, we are not convinced beyond a reasonable doubt appellant's conduct in this case was of a nature to bring discredit on the armed forces. According-

tific fact that a HIV-positive male who had a vasectomy cannot transmit the AIDS virus through sexual intercourse.

**3.** Adultery is a criminal offense in Massachusetts. Mass.Ann.Laws Ch. 272, Sec. 14 (1991).

It is even a crime for a married, consenting adult to have sexual intercourse in private with a person not his or her spouse. *Commonwealth v. Stowell,* 389 Mass. 171, 449 N.E.2d 357 (1983).

ly, we hold that the evidence is legally insufficient to prove discredit on the armed forces.

The findings of guilty and the sentence are set aside and the charges and specifications are dismissed.

Senior Judge FOREMAN and Judge ISKRA concur.

Note: The appellant died on February 6, 1992. Thereafter, the U.S. Army Court of Military Review entered an order abating the court-martial proceedings ab initio.