**UNITED STATES, Appellee,**

v.

**Specialist Kenneth A. SCHOOLFIELD, 295–70–9624, United States Army, Appellant.**

**ACMR 9101417.**

U.S. Army Court of Military Review.

13 Nov. 1992.

For Appellant: Greg D. McCormack, Captain Emmett G. Wells, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC, Captain Robert J. Walters, JAGC (on brief).

Before CREAN, WERNER, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

The appellant was found guilty, contrary to his pleas, by a military judge sitting as a general court-martial, of attempted sodomy, disobeying superior commissioned officers (11 specifications), sodomy, aggravated assault (seven specifications), and performing an indecent act, in violation of Articles 80, 90, 125, 128, and 134, Uniform Code of Military Justice 10 U.S.C. §§ 880, 890, 925, 928, and 934 (1982) [herinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for fifteen years, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant was diagnosed in 1988 with the Human Immunodeficiency Virus (HIV). He was medically evaluated at the Walter Reed Army Medical Center and assigned to Fort Eustis, Virginia. Upon arriving at his new duty station, the appellant was counseled by his company commander and given the standard order not to engage in sexual intercourse unless he warned his partner of his positive HIV condition and used a barrier protection (condom). A succession of company commanders, upon assuming command of the appellant's company, gave the same counseling and order to the appellant. The appellant had unwarned, and unprotected, sexual intercourse with five separate women. All the women testified as to their sexual activities with the appellant and a videotape taken by the appellant of his exploits with two of the women was admitted into evidence.

The appellant's numerous assignments of error can be placed in two categories; first, the military judge erred in admitting certain evidence; and secondly, the evidence is not legally and factually sufficient to support the findings of guilty. We disagree on all assignments of error and affirm.

### I. Evidence

#### A. Admission of Blood Test Records

The appellant asserts that the military judge erred in admitting the appellant's blood sample medical records into evidence as proof that he is HIV positive. He asserts that, the records were not kept in the regular course of business; a proper chain of custody was not established; and, the records contained errors that question their reliability which prevented them from being admitted as an exception to the hearsay rule. The appellant's claim is directed at four serology reports and a set of Western Blot test results indicating that appellant was HIV positive.[1]

The government relied on the testimony of Doctor (Lieutenant Colonel) Redfield, Chief of Retroviral Research at the Walter Reed Army Institute of Research, for the admissibility of these documents. Doctor Redfield is responsible for the Army's program of treatment and prevention of HIV infection. He extensively described the Army's HIV testing program and how the prosecution exhibits were produced and maintained within the program. He explained that after the blood is drawn from a soldier the actual blood tests are conducted at laboratories under contract to the Army. However, the test results are maintained at the Walter Reed Institute of Research in the ordinary course of business.

---

1. These exhibits, Prosecution Exhibits 8 and 13, were admitted over defense objection as to authenticity and hearsay.

As the medical director of the Institute, he was familiar with the record keeping procedures. The test results were certified as authentic by the records custodian, Doctor Roberts. The original laboratory results are signed and placed in the patients' medical records and unsigned results are posted in the Walter Reed Institute of Research files. Doctor Redfield also testified that the correction made on one of the samples to the social security number of the appellant was done correctly.

Doctor Wright, who had helped Doctor Redfield establish the Army's HIV program, testified for the defense. Doctor Wright also reviewed the records and his opinion, based upon the errors in the record (unsigned reports and corrected social security number), was that the records were unreliable.

■ The military judge admitted the prosecution exhibits under the business record exception to the hearsay rule. Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 803(6) [hereinafter MCM, 1984 and Mil.R.Evid.]. This rule provides for the admission, as an exception to the hearsay rule, of:

> Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

The basis for this exception is the guarantee of reliability in the regularity of the record keeping and the reliance of the business on the records. *See* Stephen A. Saltzburg et al., *Military Rules of Evidence Manual* 797 (3rd Ed.1991). If the custodian does *not* testify, the other "qualified witness" must be generally familiar with the record keeping system. The witness can testify as to documents produced by another organization provided he has an understanding of the activity about which the documents report and the documents are maintained by his organization. *United States v. Garces*, 32 M.J. 345, 347–48 (C.M.A.1991). The military judge's decision on admissibility is tested on appeal by an abuse of discretion standard. *United States v. Morris*, 30 M.J. 1221, 1224 (A.C.M.R.1990); *United States v. Cordero*, 21 M.J. 714 (A.F.C.M.R.1985).

■ Doctor Redfield, as the medical director of the Walter Reed Institute of Research, was qualified to testify as to that organization's record keeping system. He could testify as to the contract laboratory's testing and to the maintenance of the records by the Institute for Research. His explanation as to the corrections made to the reports and to the lack of signature was reasonable and showed the reliability of the records. Doctor Wright's contrary opinion notwithstanding, the testimony of Doctor Redfield as to the reliability of the records is sufficient to support its admissibility. We find that the military judge did not abuse his discretion in admitting the records of appellant's blood samples that show he was HIV positive.

### B. Confidential Statements

The appellant also asserts that the military judge erred by admitting into evidence confidential statements he made to a community health nurse. In January 1990, the appellant called Mrs. E, the Community Health nurse at Fort Eustis, to arrange for an appointment with a doctor. Mrs. E knew appellant was HIV positive. The resulting medical tests revealed that the appellant had contracted gonorrhea. Mrs. E, by Virginia state law, was required to interview the appellant to learn of his sexual contacts. She contacted the Staff Judge Advocate's office and was informed that she could either advise the appellant of his Article 31(b), UCMJ, 10 U.S.C. § 831(b), rights or, since she was in the health care business, not advise him of his rights. Mrs. E did not advise the appellant of his

rights and he revealed to her his sexual contacts. Mrs. E notified health officials of her findings and noted the appellant's sexual contacts in his medical records.

In January 1991, while conducting a criminal investigation of the appellant, the Criminal Investigation Command (CID) investigators obtained appellant's medical record and learned from Mrs. E's annotations in January 1990 that a Ms. T had been a sexual partner of the appellant. The appellant was charged with a number of offenses pertaining to his sexual contact with Ms. T and she testified for the prosecution at his trial.

The military judge made findings of fact that Mrs. E was motivated by community health concerns when she interviewed the appellant in January 1990 concerning his sexual contacts. She was not acting in a law enforcement or disciplinary role. The military judge found that Mrs. E only intended to determine the appellant's sexual contacts to trace and treat people who had been exposed to the appellant's sexually transmitted disease; she did not act on behalf of or contact law enforcement officials; and, she only contacted Virginia state health officials as she was required, put the information in her files, and did not contact anyone in the military.

██ The Court of Military Appeals has set forth a clear rule that Article 31(b), UCMJ, warnings are not required when questioning is not done for law enforcement or disciplinary purposes. *United States v. Loukas*, 29 M.J. 385 (C.M.A.1990). When the questioning of a person is done for legitimate medical reasons, the questioning is outside the scope of Article 31(b). *United States v. Moore*, 32 M.J. 56 (C.M.A. 1991).

██ We agree with the findings of the military judge that show that Mrs. E was questioning the appellant for a medical reason and not for law enforcement or disciplinary reasons. Accordingly, we hold that the military judge correctly ruled that the confidential statements made to Mrs. E by the appellant were admissible into evidence.

## C. Testimony of Ms. T

The appellant also asserts that Ms. T should not have been permitted to testify because the government learned of Ms. T's identity thorough an illegally seized videotape.

On 10 January 1991, a Ms. J called the appellant's unit and informed the company executive officer, First Lieutenant (1LT) C, that the appellant had made a tape of them engaging in sexual intercourse in his barracks room on 8 January 1991. She told 1LT C that the appellant made the tape without her consent and was threatening to make the tape public. She also told 1LT C that the tape was in the appellant's barracks room and asked if he would recover it for her. The next day, Ms. J called 1LT C and asked if he had recovered the tape. She was referred to the company commander, Captain (CPT) K, and repeated her story of the taping and again asked for assistance in recovering the tape.

Captain K, as the appellant's commander, knew that the appellant was HIV positive. Captain K had also learned from a soldier billeted in the room next to the appellant that the appellant was loudly playing a videotape late at night of himself having sexual intercourse with females. Captain K was concerned that the appellant may have violated her safe sex order. She consulted with attorneys in the staff judge advocate's office and was advised to seek a search authorization to seize the tape from the military magistrate. Captain K and 1LT C prepared affidavits and appeared before CPT H, the military magistrate. Based upon the affidavits and the testimony of CPT K and 1LT C, the military magistrate issued a warrant to search the appellant's barracks room for the videotape.

On 12 January 1991, agents of the CID went to the barracks to execute the warrant. The investigators discovered that the wrong room number for the appellant's room was listed on the search warrant. The warrant was returned to the military magistrate who made pen and ink corrections on the warrant.

The appellant was apprehended before the search and taken to the CID office. The CID agents dispatched to conduct the search, knowing that the appellant had been apprehended and taken to their office, requested that the appellant's consent to search his room be obtained. The appellant was correctly advised of his rights and he freely and voluntarily consented to the search of his barracks room. A videotape of the appellant having sex with both Ms. J and Ms. T was discovered and seized during the search.

The military judge's findings of fact determined that the military magistrate issued a search warrant to obtain evidence of a suspected violation of a lawful order based on affidavits from, and oral discussions with, CPT K and 1LT C. The room to be searched was incorrectly noted on the warrant and it was changed by the magistrate based on the information provided by the CID agent. The underlying basis for the search was not changed.

The military judge further found that the military magistrate had sufficient probable cause to issue the warrant. Ms. J had reported that she was filmed in the appellant's barracks room on 8 January 1991 while having sex with the appellant. An independent source had told CPT K that the appellant loudly played recordings late at night of himself having sex with females. He found this information sufficient to corroborate Ms. J's information. He further found that the appellant's consent to search his room was knowingly and voluntarily given.

■ We find from a totality of the circumstances that probable cause existed for the military magistrate to issue a search warrant to seize the video tape and video equipment from the appellant's barracks room. *See Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). Ms. J had provided information on the taping which was corroborated by an independent source. The taping had been done in the barracks room just a few days earlier. It was reasonable to believe that the tape might still be in the appellant's room. Also, we find that, based on the

totality of the circumstances, the consent to search was voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Goudy*, 32 M.J. 88 (C.M.A.1991). We hold that the video tape was properly admitted into evidence.

## II.  Legal and Factual Sufficiency

The appellant attacks the legal and factual sufficiency of the evidence with respect to the findings of guilty of aggravated assault because the government failed to prove that the appellant either transmitted or was capable of transmitting the HIV virus. The testimony is uncontroverted that the appellant is HIV positive and that he had unprotected and unwarned sex with the five females. One of the females testified that he ejaculated inside her vagina and others testified that he may have withdrawn from the vagina before ejaculation. Doctor Redfield testified that the HIV virus is not only contained in the semen present when the male ejaculates, but also in pre-ejaculation fluids. Doctor Wright testified for the defense that the HIV virus is contained only in the seminal fluid present only on ejaculation. Appellant contends that he did not intend to transmit the HIV virus to the females and that he could not have transmitted the virus because he withdrew his penis from the vagina before ejaculation.

■ An HIV positive soldier can be convicted of assault for having unwarned and unprotected sexual intercourse. *United States v. Johnson*, 30 M.J. 53, 56 (C.M.A. 1990); *United States v. Perez*, 33 M.J. 1050, 1053 (A.C.M.R.1991). The appellant was charged with and convicted of aggravated assault with a means likely to produce death or grievous bodily harm. "Bodily harm" is defined as an offensive touching. MCM, 1984, Part IV, para. 54(c). In an HIV positive assault, the offensive touching is the exposure of the victim to the HIV virus which can produce death or grievous bodily harm. *Johnson*, 30 M.J. at 57.

The test for factual sufficiency is whether after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this Court is itself convinced of appellant's guilt beyond a reasonable doubt. UCMJ art. 66(c); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). The test for legal sufficiency is whether considering the evidence in a light most favorable to the government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Using the tests of *Turner* and *Jackson,* we are convinced of the appellant's guilt of aggravated assault. The evidence shows that the appellant had sexual intercourse with the victims, that he was HIV positive, and that he was capable of transmitting the virus when he placed his penis in the women's vagina. His aggravated assault is similar to that of pointing a loaded gun at a victim. In this case, by analogy, because he is HIV positive, the appellant's gun is loaded and he assaults his victims by merely placing his penis in their vagina, whether or not he ejaculates in them.

This case is distinguishable from our opinion in *Perez.* In that case, the evidence of record was that Perez had a vasectomy and was not able to transmit the HIV virus. The government presented no evidence and failed to prove that a male with a vasectomy can transmit the HIV virus. *Perez,* 33 M.J. at 1053. In this case, the government, through the testimony of Doctor Redfield, presented evidence that the male can transmit the HIV virus even though there may not be an ejaculation in the vagina. We hold that the evidence was legally and factually sufficient to support the findings of guilty of aggravated assault.

The other assertions of error made by the appellant have been carefully considered and are without merit. The appellant contends that his sentence is too severe. We find that the military judge in sentencing the appellant showed him more compassion than he showed his victims. The appellant showed little concern that he was potentially transmitting a deadly disease to his sexual partners by satisfying his sexual urges. The sentence is appropriate.

The findings of guilty and the sentence are affirmed.

Judge WERNER and Judge GONZALES concur.