UNITED STATES, Appellee,

v.

Private First Class Keith M. WILLIAMS,
226–08–8254, United States Army,
Appellant.

ACMR 9200949.

U.S. Army Court of Military Review.

17 Feb. 1994.

For Appellant: Richard T. McNeil (argued); Captain Teresa L. Norris, JAGC (on brief).

For Appellee: Captain Louis E. Peraertz, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC, Major Kenneth T. Grant, JAGC (on brief).

Before WERNER, LANE, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

LANE, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of attempted premeditated murder, wrongful distribution of crack cocaine, and sodomy, in violation of Articles 80, 112a, and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 912a, and 925 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for twenty years, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant asserts, inter alia, that: (1) the military judge erred in admitting evi-

dence of uncharged misconduct and in his instructions thereon; (2) the evidence is insufficient to prove premeditation; and (3) the military judge erred in admitting the appellant's unwarned responses to questions posed by a noncommissioned officer (NCO) escort. We find only the first contention to have any merit.

### I. Uncharged Misconduct

The prosecution's first witness was Ms. M, a participant in the sodomy and the cocaine distribution, and the victim of the attempted murder. After she testified about performing fellatio on the appellant in return for a piece of crack cocaine, Ms. M was asked "how do you know it was cocaine?" She replied, "Because every time we ever got together, he always, you know, what I asked for." The defense objected and the trial counsel argued that the statement was admissible to show her knowledge of the substance's identity, "based on a pattern, a previous pattern with this accused." The military judge overruled the objection.

The trial counsel restated the question, with the following result:

A. Because usually, as long as we've been dealing, everytime he give it to me, it—
ADC: Objection, Your Honor.
MJ: That objection has been overruled.
A: It usually be cocaine, so you know, I didn't have to taste it.

Following the direct examination of Ms. M, the defense moved for a mistrial because her testimony conveyed evidence of uncharged misconduct. The military judge denied the motion, saying that the evidence tended to prove Ms. M's knowledge of the accused and of the substance as cocaine. Finally, prior to the members deliberating on findings, the military judge instructed them that "[e]vidence that Ms. [M] and the accused had previously agreed to exchange cocaine for sexual services" could be considered for the limited purposes of determining her knowledge that the substance was cocaine, why she performed fellatio on the accused, her knowledge of the accused, and her understanding that the drugs were in exchange for sex.[1]

---

1. He also advised that the evidence could not be used to conclude that the accused is a bad person or has criminal tendencies and committed the offenses charged.

Military Rule of Evidence 404(b) [hereinafter Mil.R.Evid.] provides that "[e]vidence of other crimes, wrongs or acts" may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Such evidence is not admissible to prove the accused's character or that he acted in conformity therewith. *Id.* Evidence of uncharged misconduct is admissible if it meets three tests: (1) the evidence reasonably supports a finding that the accused committed prior crimes, wrongs or acts; (2) a fact in dispute is made more probable by the existence of such evidence; and (3) the probative value of the evidence outweighs the danger of unfair prejudice in accordance with Mil. R.Evid. 403.[2] *United States v. Dorsey,* 38 M.J. 244 (C.M.A.1993); *United States v. Reynolds,* 29 M.J. 105 (C.M.A.1989); *United States v. Ferguson,* 28 M.J. 104 (C.M.A. 1989); *United States v. Mirandes–Gonzalez,* 26 M.J. 411 (C.M.A.1988); *United States v. Rappaport,* 22 M.J. 445 (C.M.A.1986); *United States v. Williams,* 37 M.J. 972, 975 (A.C.M.R.1993). Prior misconduct offered to prove a fact by means of a design or pattern must be "significantly similar" to the charged act if it is to be sufficiently probative to overcome its prejudicial effect. *Rappaport,* 22 M.J. 445; *United States v. Lewis,* 38 M.J. 501, 509 (A.C.M.R.1993). If the evidence fails to meet any one of the three tests, it is inadmissible. *United States v. Cousins,* 35 M.J. 70 (C.M.A.1992). We find that both responses fail to meet all three tests, and that the military judge erred to the appellant's prejudice when characterizing this evidence and delineating it in his instruction.

Under the first test, Ms. M's initial response to the question, "how do you know it was cocaine," is so vague that it °does not reasonably support a finding as to any prior crime, wrong, or act. However, because it provided the members with no damaging information about the appellant, it was harmless. Her second response ["As long as we've been dealing it usually be cocaine"], however, is specific enough to support a finding that she and the appellant had had prior dealings involving cocaine. From this prior pattern of conduct, the members could find it probable that she knew that the substance she received from the appellant on the day in question was cocaine, meeting the second test as well.

The final test is whether the probative value of this second response, tending to prove that the substance was cocaine, outweighs the prejudicial effect of portraying the appellant as an unscrupulous drug dealer. We think not. Ms. M said that what she had previously received from the appellant "usually" was cocaine, which implies that sometimes it wasn't. She was not asked to explain how she knew when it was and wasn't cocaine. More to the point, her response implied to the members that the appellant not only dealt drugs, but that sometimes he cheated his clients. The harm of this portrayal of the appellant as a bad person is greater than the value of this testimony for proving that the substance in question was cocaine.[3] *See Cousins,* 35 M.J. at 75 (painting accused as habitual user had unfair prejudicial impact); *Rappaport,* 22 M.J. at 447 (showed propensity, not plan); *Williams,* 37 M.J. at 975 (evidence of prior drug conviction had limited probative value but high prejudicial impact).

Making matters worse, the military judge's instruction erroneously characterizes this evidence as showing that Ms. M and the appellant "had previously agreed to exchange cocaine for sexual services." Further, he told the members that they could consider it as having probative value for a variety of facts. However, nowhere in her statement of prior dealings does Ms. M mention sex, and the prosecution only offered her statements for identification of the drug.

2.  Mil.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

3.  In fact, immediately after this response, Ms. M testified that she knew the substance given her that day was cocaine because she tested it "[o]n my tongue" and it tasted like cocaine.

In light of the clear evidence of the appellant's guilt otherwise, we do not believe that these errors require us to disturb the findings. It is, however, likely that this evidence affected the sentence, and we will deal with this prejudice in our decretal paragraph through reassessment. *United States v. Sales,* 22 M.J. 305 (C.M.A.1986).

## II. Sufficiency

■ The appellant contends that the evidence relating to the charge of attempted premeditated murder is "insufficient to prove beyond a reasonable doubt that appellant had the premeditated intent to kill Ms. [M]." Specifically, the appellant contends that Ms. M's testimony about Specialist (SPC) L being in the front seat of the car, playing with a gun (apparently loading and unloading a clip), means that the appellant, when he pointed the pistol at Ms. M, could have believed it was unloaded. The appellant also relies on testimony by Ms. M that there were "feelings" between her and the appellant which auger against his wanting to kill her, and on the pattern of the four wounds Ms. M sustained (one each in her arms and legs) as showing no real attempt to aim and hit her in a manner likely to produce her death.

■ When reviewing a case for legal sufficiency, the scope of review is whether, viewing the evidence in a light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987); *United States v. Burris,* 21 M.J. 140 (C.M.A. 1985); *United States v. Schoolfield,* 36 M.J. 545 (A.C.M.R.1992); *United States v. Fisher,* 30 M.J. 698 (A.C.M.R.1990). On the other hand, when testing a case for factual sufficiency, this court must, after weighing the evidence and making allowances for not having seen the witnesses in person, be convinced that an accused is guilty beyond a reasonable doubt. *Turner,* 25 M.J. 324; *Schoolfield,* 36 M.J. 545; *United States v. Tyler,* 36 M.J. 641 (A.C.M.R.1992); *Fisher,* 30 M.J. 698. We find the evidence in this case to be both legally and factually sufficient to prove premeditation.

■ Premeditated murder requires the formation of a specific intent to kill and consideration of the act intended. Manual for Courts-Martial, United States, 1984, Part IV, para. 43c(2)(a) [hereinafter MCM, 1984]. It is immaterial how soon after the fixed purpose to kill is formed that it is executed. *Id.* The existence of premeditation may be inferred from the circumstances. *Id.; United States v. Ayala,* 22 M.J. 777, 797 (A.C.M.R.1986), *aff'd,* 26 M.J. 190 (C.M.A. 1988). But intent to kill alone is insufficient; there must also be evidence that one with a cool mind reflected on that intent. *United States v. Hoskins,* 36 M.J. 343, 346 (C.M.A. 1993).

Ms. M testified that after she and the appellant began to argue over their sex-for-drugs deal, she made a threat that she could turn him in to the authorities. The appellant then told her to get out of his car. As she exited, she saw him pull a gun from under the seat. At that point she said "Please don't shoot me," after which the appellant took a breath and then shot at her. She turned and ran into the night, with the appellant shooting five more shots, each about a second apart.

Under these circumstances, we are dealing with split second decisions and actions. As soon as the appellant felt threatened, he ordered Ms. M out of the car and reached for the pistol. At that point, he could well have formed the intent to kill her, in order to keep her quiet. During Ms. M's plea not to be shot and the pause, however short, between that and the first shot, the appellant had time to reflect on his intended act. The six shots, each a second apart, add further to the deliberate nature of the appellant's action. The appellant being a poor marksman, a boon to Ms. M, does not detract from this inference.

## III. Unwarned Statement

■ On the day before trial, Staff Sergeant (SSG) R and Sergeant (SGT) G were detailed by the battery commander to escort the appellant to the barber shop and his attorney's office. At one point, the appellant and SSG R were in the vehicle alone. SSG R struck up a conversation with the appellant, asking questions about life in the stockade.

He then asked the appellant several questions about the incident; the appellant answered the one about where he had shot the victim by pointing to spots on his body. At no time did SSG R read the appellant his rights under Article 31, UCMJ.

SSG R testified that he had asked about life in the stockade out of concern for how a fellow soldier in his unit was faring, and had asked about the charged incident out of curiosity because of the rumors going around the unit. He stated that no one had given him any instructions about questioning the appellant, that he really did not know anything about the charges, and that he was not pressing the appellant for answers. SSG R also related that he and the appellant had had a normal, but friendly, sergeant-private relationship. He told his battery commander about the conversation the next day in relating, generally, how the previous day's escorting had gone, and not with any thought of being a witness against the appellant. The military judge denied the defense motion to suppress the appellant's statements, making detailed findings of fact.

■ The Court of Military Appeals has denied the application of Article 31(b), UCMJ,[4] to situations not considered by its framers and unrelated to the reasons for its creation. *United States v. Duga*, 10 M.J. 206, 209 (C.M.A.1981). Rather, in each case it is necessary to determine: (1) whether the questioner was acting officially in his inquiry or only from some personal motivation; and (2) if the person questioned perceived the inquiry as more than a casual conversation. *Id.* at 210. Not all communications by persons subject to the Uniform Code of Military Justice constitute an interrogation or amount to requesting a statement from an accused or suspect. *United States v. Pittman*, 36 M.J. 404 (C.M.A.1993). We find that there was no requirement to give an Article 31(b) warning in this case, and that the appellant's statement was admissible.

4. Article 31(b), UCMJ, provides:
   No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not

In *Pittman*, the accused's immediate non-commissioned officer (NCO) supervisor, serving as his escort, asked the accused about "what was going on" and received incriminating statements in response. The military judge found that the NCO's inquiry was motivated out of curiosity, was not an attempt to interrogate the accused, and admitted the challenged statements. The military judge in this case understood these rules well and had the nature of SSG R's inquiry fully litigated. He then supported his ruling with specific findings of fact, with which we agree.

The remaining assertions of error are without merit.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, the court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for eighteen years, forfeiture of all pay and allowances, and reduction to Private E1.

Senior Judge WERNER and Judge RUSSELL concur.

have to make any statement regarding the offense of which hi is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.