UNITED STATES, Appellee

v.

Kenneth A. SCHOOLFIELD, aka KB X, Specialist, U.S. Army, Appellant.

No. 93–0290.
CMR No. 9101417.

U.S. Court of Military Appeals.

Argued Jan. 5, 1994.

Decided Aug. 19, 1994.

For Appellant: *Captain Christopher W. Royer* (argued); *Colonel Malcolm H.*

*Squires, Jr., Lieutenant Colonel James A. Weise, Captain Michael E. Smith* (on brief); *Colonel Stephen D. Smith, Major Michael S. Egan, Major James M. Heaton.*

For Appellee: *Captain Glenn L. Kirschner* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Richard A. Cefola, Captain Robert J. Walters* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant was tried by a general court-martial composed of a military judge alone at Fort Eustis, Virginia, in June of 1991. Contrary to his pleas, he was found guilty of attempted consensual sodomy, disobedience of a superior commissioned officer (11 specifications), sodomy, aggravated assault (7 specifications), and committing indecent acts, in violation of Articles 80, 90, 125, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 890, 925, 928, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 15 years, total forfeitures, and reduction to pay grade E–1 on June 29, 1991. The convening authority approved this sentence on October 10, 1991, and the Court of Military Review affirmed his action on November 13, 1992. 36 MJ 545.

On April 22, 1993, this Court granted appellant's petition for review on two issues raised by appellate defense counsel, as follows:

I

WHETHER THE MILITARY JUDGE ERRED, TO THE SUBSTANTIAL PREJUDICE OF APPELLANT, BY CHARACTERIZING AN AGGRAVATED ASSAULT BASED ON AN ATTEMPT THEORY AS A GENERAL INTENT CRIME, RATHER THAN A SPECIFIC INTENT CRIME, AND THE GOVERNMENT FAILED TO PROVE SPECIFIC INTENT ON THE PART OF APPELLANT.

II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY FINDING APPELLANT GUILTY OF A LESSER INCLUDED OFFENSE OF INDECENT ACTS TO THE CHARGED OFFENSE OF RAPE.

We hold that appellant was properly found guilty of aggravated assault in violation of Article 128(b)(1). *See generally United States v. Joseph,* 37 MJ 392 (CMA 1993); *United States v. Stewart,* 29 MJ 92 (CMA 1989). We further hold that committing indecent acts is a lesser-included offense of rape as a matter of law. *See generally Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *United States v. Headspeth,* 2 USCMA 635, 10 CMR 133 (1953).

The Court below noted the circumstances of appellant's offenses as follows:

The appellant was diagnosed in 1988 with the Human Immunodeficiency Virus (HIV). He was medically evaluated at the Walter Reed Army Medical Center and assigned to Fort Eustis, Virginia. Upon arriving at his new duty station, the appellant was counseled by his company commander and given the standard order not to engage in sexual intercourse unless he warned his partner of his positive HIV condition and used a barrier protection (condom). A succession of company commanders, upon assuming command of the appellant's company, gave the same counseling and order to the appellant. The appellant had unwarned, and unprotected, sexual intercourse with five separate women. All the women testified as to their sexual activities with the appellant and a videotape taken by the appellant of his exploits with two of the women was admitted into evidence.

36 MJ at 547.

Appellant was found guilty of seven specifications of aggravated assault all basically worded the same, as follows:

SPECIFICATION: In that [appellant] did, at Fort Eustis, Virginia, on or about [certain date], while knowing he was infected with the Human Immunodeficiency Virus (HIV) and knowing that the virus could be transmitted through sexual inter-

course, *commit an assault upon [a female] by having unprotected sexual intercourse with her,* a means likely to produce death or grievous bodily harm, to wit: exposing her to the HIV (AIDS) virus.

(Emphasis added.)

The Court of Military Review also noted the following evidence supporting these specifications:

The evidence shows that the appellant had sexual intercourse with the victims, that he was HIV positive, and that he was capable of transmitting the virus when he placed his penis in the women's vagina. His aggravated assault is similar to that of pointing a loaded gun at a victim. In this case, by analogy, because he is HIV positive, the appellant's gun is loaded and he assaults his victims by merely placing his penis in their vagina, whether or not he ejaculates in them.

This case is distinguishable from our opinion in [*United States v.] Perez* [, 33 MJ 1050 (1991) ]. In that case, the evidence of record was that Perez had a vasectomy and was not able to transit the HIV virus. The government presented no evidence and failed to prove that a male with a vasectomy can transmit the HIV virus. *Perez,* 33 MJ at 1053. In this case, the government, through the testimony of Doctor Redfield, presented evidence that the male can transmit the HIV virus even though there may not be an ejaculation in the vagina. We hold that the evidence was legally and factually sufficient to support the findings of guilty of aggravated assault.

36 MJ at 551.

## I

The first granted issue in this case raises four questions concerning appellant's convictions for aggravated assault under Article 128(b)(1). First, what legal theory of assault did the military judge employ in determining appellant's guilt of assaulting these women with a means likely to produce death or grievous bodily harm? Second, is that legal theory of assault punishable under Article 128(a) and (b)(1)? Third, what was the crim-

inal intent used to determine appellant's guilt under this legal theory of assault? Fourth, did the prosecution introduce sufficient evidence to prove the required intent for these offenses under Article 128(a) and (b)(1)?

## A

### *Theory of Assault*

As a starting point, we note the language of Article 128, as follows:

**Assault**

(a) Any person subject to this chapter who attempts or offers with unlawful force or violence to do bodily harm to another person, whether or not the attempt or offer is consummated, is guilty of *assault* and shall be punished as a court-martial may direct.

(b) *Any person subject to this chapter who—*

(1) *commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm;* or

(2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon;

*is guilty of aggravated assault* and shall be punished as a court-martial may direct.

(Emphasis added.)

Appellant concedes that there are three possible theories of assault under this codal article; an attempted-battery assault; an offer-battery assault; and an intentional-battery assault. *See* para. 54b(4)(a)(i), Part IV, Manual for Courts–Martial, United States, 1984. Final Brief at 3–4. Yet, he insists that the only theory pertinent to his case is the attempted-battery theory because none of his sexual partners were shown to have actually contracted the AIDs disease. He further implies that, under this theory of assault, the "bodily harm" specifically intended was the infection of his sex partners with the HIV virus or their exposure to his infected body fluids. Accordingly, he argues that the military judge legally erred when he suggested that the bodily harm under the prosecution's theory of assault was unpro-

tected sexual intercourse and that it need only be generally intended.[1]

We disagree with appellant's premise that he was convicted of assault (aggravated) on an attempted-battery theory. Admittedly, each aggravated assault specification in this case alleged an act of unprotected sexual intercourse as the means of the assault. However, the prosecution in its argument against a motion for finding of not guilty and its closing argument on findings also indicated they were proceeding on the theory that "the bodily harm" or offensive touching was that act of sexual intercourse itself with its substantial possibility of introduction of the virus. Moreover, the military judge repeatedly indicated that his understanding of the prosecution's theory of criminal liability was that appellant assaulted his victims by intentionally having unprotected sex with them. Accordingly, we conclude that appel-

lant was prosecuted on the basis of an intentional-battery theory of assault with the bodily harm being unprotected sexual intercourse. *See United States v. Joseph*, 37 MJ at 395–96 n. 4.

## B

### *Legality of Theory*

■■ The next question we must decide is whether an intentional battery constitutes an assault within the meaning of Article 128(a). This section punishes an assault "whether or not the attempt or offer is consummated." A reasonable inference from such language is that this statute punishes a consummated assault or "battery." *See United States v. Joseph*, 37 MJ at 398 (Sullivan, C.J., concurring).[2] In addition, as pointed out by Judge Cox in *Joseph*, proof of an

1. A major part of appellant's defense was that he honestly believed withdrawal before ejaculation would protect his sex partners from being infected with HIV virus or being exposed to that virus. Defense counsel argued that appellant had a genuine mistake of fact in this regard and could not have the *specific* intent to infect his sex partners with the HIV virus or even expose them to it.

RCM 916(j), Manual for Courts-Martial, United States, 1984, provides:

(j) *Ignorance or mistake of fact.* Except as otherwise provided in this subsection, it is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense. If the ignorance or mistake goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact, the ignorance or mistake need only have existed in the mind of the accused. If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances. However, if the accused's knowledge or intent is immaterial as to an element, then ignorance or mistake is not a defense.

2. Assuming Article 128, Uniform Code of Military Justice, 10 USC § 928, does not prohibit a battery, certainly such conduct would be considered a service disorder or discredit under Article 134, UCMJ, 10 USC § 934. *See* W. Winthrop, *Military Law and Precedents* 666, 687 (2d. ed. 1920 Reprint). This view of the status of battery as a crime under the Uniform Code of Military

Justice was reluctantly recognized by the drafters of Manual for Courts–Martial, United States, 1951. They said:

A battery is defined, in effect, as a consummated assault. While Article 128a does not specifically cover a battery other than in the statement "whether or not the attempt or offer is consummated," *the President may prescribe a greater punishment for assault consummated by the infliction of harm than for the mere attempt or offer, and such an offense is logically punishable under Article 128 rather than under the general article.* A battery, also, may be committed either intentionally or through culpable negligence, but the distinction between attempt and offer which is made in a simple assault is not necessary in battery because of the actual unlawful infliction of bodily harm. *See* 4 Am. Jur., Assault and Battery, §§ 3, 5, and 6. For a discussion of battery committed by culpable negligence, *see Commonwealth v. Hawkins*, 157 Mass. 551, 32 NE 862; and when committed by motor vehicles, *see* 99 ALR 835.

*See* Legal and Legislative Basis, Manual for Courts–Martial, United States, 1951, at 285. Accordingly, assuming an error on our part in construing Article 128(a) and (b)(1), such a misdesignation would not necessarily invalidate a finding of guilty to intentional battery. *See* RCM 307(d). *See United States v. Deller*, 3 USCMA 409, 413, 12 CMR 165, 169 (1953). Moreover, a finding of guilty to aggravated battery with a dangerous weapon or other means or force likely to produce death or grievous bodily harm could also be maintained under Article 134. *See generally United States v. Curry*, 35 MJ 359, 360–61 (CMA 1992).

intentional battery necessarily establishes an attempted-battery assault. *See* 6 Am Jur 2d, Assault and Battery § 7 at 13–15.[3]

■ Of course, in *United States v. Joseph,* 37 MJ at 395–96, this Court recently held that protected or unprotected sexual intercourse by an HIV-infected soldier with another person *without informing* that person of the disease constituted an intentional offensive touching under Article 128 (an assault). Here, the challenged specifications only alleged that unprotected sexual intercourse occurred involving a soldier who knew he was infected with the HIV virus and who knew it could be transferred by sexual intercourse. Nevertheless, our prior case law has recognized that unprotected sexual intercourse by a service member who knows that he carries the HIV virus and that he can transmit it through unprotected sexual intercourse can also be punished as an assault under Article 128. *United States v. Stewart,* 29 MJ at 93. *Cf. United States v. Womack,* 29 MJ 88 (CMA 1989) (violation of an order under Article 90); *United States v. Woods,* 28 MJ 318 (CMA 1989) (a service disorder under Article 134). *See generally* 13 ALR 5th 628 (1993); *State v. Stark,* 66 Wash.App. 423, 832 P.2d 109, 114–15 (1992).

### C

#### *Requisite Intent*

■ The third question we must decide is whether the military judge employed the correct legal standard for determining appellant's guilt under this intentional-battery theory of assault. This was a trial by judge alone; and, as pointed out by Judge Cox in *United States v. Joseph,* 37 MJ at 396 n. 5,

we need not speculate in this regard. Nevertheless, the military judge did indicate during the trial that a specific intent to infect the victim with the HIV virus or expose her to it was not required. We agree with this judge that the required criminal intent in this case was a general intent to have unprotected sexual intercourse. *See United States v. Joseph, supra* at 395 n. 3.

A battery requires doing an act which results in bodily injury or in an offensive touching, that is, bodily harm. Here, the prosecution maintained that the bodily harm under the circumstances of this case was unprotected sexual intercourse. A battery also requires an intent to do an act which results in bodily injury or in an offensive touching. Here, the prosecution asserted that the requisite intent was the intent to have unprotected sexual intercourse. In the sense that an intent to do the *actus reus* (here, an act resulting in bodily harm) is a general intent, the military judge was correct.[4] *See United States v. Redding,* 14 USCMA 242, 244–45, 34 CMR 22, 24–25 (1963); 2 Wharton's Criminal Law § 178 at 295 (C. Tortia 14th ed.1979). *See also* para. 3–107b, Military Judges' Benchbook at 3–219 (1 May 1982) ("A *T* battery*d* is defined as an unlawful and intentional" crime). *See generally* W. LaFave and A. Scott, *Substantive Criminal Law* § 3.5(e) at 313 (1986).

### D

#### *Sufficiency of Evidence*

■ The final question we must decide is whether the prosecution introduced sufficient evidence to prove beyond a reasonable doubt

---

3. An attempted-battery assault and an intentional-battery assault have the same intent requirement—an intent to do bodily harm or an offensive touching or an act resulting in the same. However, because of the actus reus for an attempted battery (an overt act tending to effect infliction of bodily harm or an offensive touching or an act resulting in the same), this intent can be properly characterized as specific. Contrarily, because of the actus reus for an intentional-battery assault (infliction of bodily harm or offensive touching or an act resulting in same), this same intent would be characterized as general.

*See generally* W. LaFave and A. Scott, *Substantive Criminal Law* § 3.5(e) at 313 (1986).

4. Appellant does not argue that the intent to have unprotected sexual intercourse is a specific intent within the meaning of RCM 916(j). Moreover, he does not contend that the specific-intent mistake-of-fact rule applies even if an attempted-battery assault (a specific-intent offense) is shown by proving an intentional battery (a general-intent crime). *See* 1, *supra.* There is simply no contention in this case that appellant genuinely believed that he was engaging in protected sex.

that appellant intentionally had unprotected sexual intercourse with his sexual partners. *See generally Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The Court of Military Review noted the evidence introduced at this trial and held that this evidence established this intent uncontrovertedly. 36 MJ at 550–51. We agree.

## II

The second issue in this case is whether the military judge properly found appellant guilty of committing indecent acts, in violation of Article 134, as a lesser-included offense of the charged offense of rape, a violation of Article 120. *See* Art. 79, UCMJ, 10 USC § 879. We think so. *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). *See also United States v. Teters,* 37 MJ 370 (CMA 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994).

Article 120 proscribes rape as follows:

(a) Any person subject to this chapter who commits an act of sexual intercourse [with a female not his wife], by force and without [her] consent, is guilty of rape and shall be punished by death or such other punishment as a court-martial may direct.[5]

Paragraph 45, Part IV, Manual, *supra,* explains the elements[6] of this offense, as follows:

b. *Elements.*

(1) *Rape.*

(a) That the accused committed an act of sexual intercourse with a certain female;

(b) That the female was not the accused's wife; and

(c) That the act of sexual intercourse was done by force and without her consent.

Indecent acts are not particularly proscribed by the Uniform Code of Military Justice, but they are generally punished under Article 134. Paragraph 90, Part IV, Manual, *supra,* explains the elements of this offense as follows:

b. *Elements.*

(1) That the accused committed a certain wrongful act with a certain person;

(2) That the act was indecent; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

■ Only one offense, rape, contains an element which the other does not. Rape requires an act of sexual intercourse which on its face is a sexual act. Indecent acts requires a sexually related act not necessarily rising to the level of sexual intercourse. *See* para. 90(c). Rape requires use of force and lack of consent of the victim, while indecent acts require a wrongfulness not necessarily rising to the level of coercion. Finally, although indecent acts requires a service disorder or discrediting circumstances, such an element is included by implication in Article 120. *See United States v. Foster,* 40 MJ 140, 143 (CMA 1994). Accordingly, since the elements of the indecent-acts offense are a subset of the elements of rape[7] (*see State v. Keffer,* 860 P.2d 1118, 1139 (Wyo.1993)), we conclude that it is a lesser-included offense of rape. *See also United States v. Dixon,* —— U.S ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

The decision of the United States Army Court of Military Review is affirmed.

---

5. Note that in 1992, the phrase and the word in brackets were deleted. Pub.L.No. 102–484, Div. A, Title X, Subtitle G, § 1066(c), 106 Stat. 2506.

6. *See* n. 5, *supra.*

7. It is well established as a matter of law that indecent assault is a lesser-included offense of rape. *United States v. Hobbs,* 7 USCMA 693, 697, 23 CMR 157, 161 (1957); *United States v. Headspeth,* 2 USCMA 635, 636, 10 CMR 133, 134 (1953); para. 45d(1)(c), Part IV, Manual, *supra.* It is also well recognized that committing indecent acts is a lesser-included offense of indecent assault. *See United States v. Jones,* 13 CMR 420, 422 (ABR 1953); *United States v. Jackson,* 31 CMR 738, 741–42 (AFBR 1962); para. 63d(2), Part IV, Manual, *supra.*

**138**

Judges COX, CRAWFORD, and GIERKE concur.

WISS, Judge (concurring in the result):

I

I join in affirming appellant's convictions of aggravated assault. Within the analytical confines of my separate opinion in *United States v. Joseph*, 37 MJ 392, 401–06 (CMA 1993), the evidence of his acts of unprotected sexual intercourse, with full knowledge of his infected condition and the circumstances of his infectiousness, is an adequate basis upon which a reasonable factfinder could conclude that appellant intended to inflict bodily harm on his victims under the attempt theory of assault. *See United States v. Stewart*, 29 MJ 92 (CMA 1989).

This theory of assault requires a specific intent to inflict bodily harm and an overt act that amounts to more than mere preparation. *See* para. 54c(1)(b)(i), Part IV, Manual for Courts–Martial, United States, 1984. As to the former, I read the record as a whole to be ambiguous as to whether the military judge as the factfinder used a general-intent or a specific-intent standard; in this circumstance, I will presume that the military judge followed the correct guidepost and, in assessing the abundant evidence of appellant's specific intent, found it. As to the latter, each instance of sexual intercourse without benefit of a protective barrier surely was an overt act toward inflicting that harm. *See United States v. Joseph, supra* at 402 n. 2 ("[T]he act of assault is not *sexual intercourse* but, rather, was the *touching of appellant's lover with appellant's HIV-affected semen*."). The happenstance here that appellant claimed on most of the occasions (though apparently not all) to have followed the somewhat-less-than-effective practice of "pulling out" before ejaculating is not legally compelling evidence to the contrary.

II

Also, I join in affirming appellant's conviction of committing an indecent act, as lesser included of the charged rape. As the parties recognize, the circumstances surrounding the doing of an act may make an otherwise per-

missible act, instead, indecent. Notwithstanding, appellant argues that a *rape* charge, which involves lack of consent, does not give notice to an accused that he must defend against a finding that his action was "indecent" even though *consensual*. *See Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); Milhizer, *Indecent Acts as a Lesser-Included Offense of Rape, The Army Lawyer* 3 (Dept. of the Army Pamphlet 27–50–234, May 1992); *see also United States v. Teters*, 37 MJ 370 (CMA 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994).

In so posing the question, however, appellant begs it. A charge of rape necessarily alleges sexual intercourse accomplished by force and without consent. Art. 120, Uniform Code of Military Justice, 10 USC § 920; para. 45b(1), Part IV, Manual, *supra*. I agree with the majority that an allegation of rape fairly puts an accused on notice that, even if he believes that the facts do not rise to the level of supporting the charge in some respect—*e.g.*, intercourse was not consummated—they might still constitute an indecent act, at least a nonconsensual one. *Cf. United States v. Hickson*, 22 MJ 146, 154 n. 11 (CMA 1986)(Everett, C.J.) ("Because force is missing but another aggravating factor is present, such [consensual sex] offenses [as carnal knowledge, adultery, bigamous cohabitation, or 'open and notorious' fornication] are not lesser-included in rape....").

Part of the circumstances involving the purported force and lack of consent here was appellant's handcuffing his sex partner—at least part of the time apparently against her will—and videotaping their sexual activity—again, evidently against her will. While appellant apparently persuaded the military judge that the act of intercourse itself was consensual, the circumstances just described that were part and parcel of the alleged rape here were not consensual.

In context, then, the charge of rape adequately put appellant on notice to defend against other pertinent nonconsensual sex-related offenses, such as forcible indecent acts—that is, sexual acts on another person

that are made "indecent" by their accomplishment without the consent of the victim, *cf. United States v. McDaniel,* 39 MJ 173 (CMA 1994)—and form an adequate basis for finding an indecent act as lesser-included of rape. *cf. id.; United States v. Daye,* 37 MJ 714 (AFCMR 1993).